UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY L. WOLFE,                              Case No. 1:12-cv-885

    Plaintiff,                              Judge Timothy S. Black

vs.

CSX TRANSPORTATION, INC.,

    Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE (Doc. 40)**

This civil action is before the court on Defendant's motion *in limine* (Doc. 40) and the parties' responsive memoranda (Docs. 46, 51).

### I.  BACKGROUND

This is a Federal Employers Liability Action ("FELA") brought pursuant to 45 U.S.C. Section 51, *et seq*.  While working as a conductor, Plaintiff allegedly injured himself operating a derail[1] on December 2, 2009.  (Doc. 1 at ¶ 4).  Defendant denies liability, alleging: (1) Defendant provided Plaintiff with a reasonably safe place to work and the appropriate equipment, free of defects to complete his job tasks in a reasonably safe manner; (2) Plaintiff was contributorily negligent by (a) using excessive force and improper body positioning when attempting to operate the derail; (b) failing to report that the derail required excessive force to operate if his inspection found that it required excessive force to operate; and (c) failing to put a bad order tag to take the derail out of

---

[1] A derail is a track appliance designed to prevent rolling stock from entering into areas where they could cause personal injury or damage to other equipment or structures.

service if his inspection found that it required excessive force; and (3) Plaintiff's injury is the result of the natural progression of his pre-existing disc disease and arthritis.

## II.  ANALYSIS[2]

### A. Evidence of Other Derails

First, Defendant argues that any evidence, testimony, or references regarding other derails should be excluded. Specifically, Plaintiff's expert, Michael Shinnick, Ph.D., opined that Defendant should have replaced the derail with a newer type of derail. Defendant argues that the issue is not whether a better derail existed, but whether the derail used was reasonably safe. Accordingly, Defendant maintains that Dr. Shinnick's proposed testimony is irrelevant because there was no duty to replace the derail and, accordingly, his testimony is likely to confuse and unfairly prejudice the jury.

Additionally, Defendant argues that Dr. Shinnick is not qualified to testify with regard to alternative derails because he has no experience in the design or operation of railroads. Therefore, Defendant argues that Dr. Shinnick's testimony should also be excluded pursuant to Rule 702.

Plaintiff claims that the derail used in this case was an old manual hand throw derail that he characterized as an "oddball" because it was allegedly different from the other types of derails that he encountered where he worked, both in terms of its operation

---

[2] Plaintiff does not oppose four of Defendant's requested limitations and therefore the Court declines to address them in detail, but memorializes the agreement as follows: (1) Plaintiff agrees not to refer to or present evidence regarding Defendant intimidating employees to discourage the reporting of injuries; (2) Plaintiff agrees not to refer to or present evidence of Defendant's ballast standards or deviations from such standards; (3) Plaintiff agrees not to present testimony regarding Defendant's failure to have a medical monitoring program; and (4) Plaintiff agrees that he does not seek compensation for past wage loss, future wage loss, wages/loss of earning capacity, nor lost fringe benefits and will not present evidence concerning such economic losses.

and the exertion required to operate it. (Doc. 41 at 97, 171-172). Plaintiff claims the derail was considerably more strenuous to operate than others in the area. (*Id.* at 83). Plaintiff maintains that the forces required to operate the derail were 86 pounds to lift and 92 pounds to lower, far in excess of the National Institute for Occupational Safety and Health ("NIOSH") Recommended Weight Limit for the posture required to open and close this derail. (Doc. 43 at 44-45, 55-57).[3]

FELA requires "a duty to exercise ordinary care to supply machinery and appliances reasonably safe and suitable for the use of the employee." *Chicago & Northwestern Rwy. v. Bower*, 241 U.S. 470, 473 (1916). While Defendant's appliances need not be the newest or absolutely safest, the law mandates that the appliance provided be "reasonably safe and suitable." *Id.* Whether the Defendant should have replaced the derail with a newer type of derail because the existing derail was not "reasonably safe and suitable for the use of the employee" is therefore entirely relevant. Defendant can certainly argue that it did not have a duty to replace the derail because the existing derail was "reasonably safe and suitable."

With respect to Dr. Shinnick's qualifications, an expert must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702(a). Experts need not confine their testimony to matters upon which they have personal knowledge. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Experts may base their opinions on facts and data "experts in the particular field would reasonably rely on…in

---

[3] These NIOSH safe lifting guidelines were developed to prevent back injuries. (*Id.* at 53-55, 79).

forming an opinion on the subject." Fed. R. Evid. 703. Accordingly, the fact that Dr. Shinnick has no experience in the design or operation of railroads does not render him unqualified to opine as to whether a specific derailer was reasonably safe and suitable. Dr. Shinnick explains that, as a biomechanic, he deals with the science of how materials respond to being "loaded" or pushed, pulled, and twisted and figures out how that object will respond to that force. (Doc. 43 at 10). Accordingly, Dr. Shinnick is clearly qualified to testify about derailers in this case. Defendant can certainly cross-examine him about his qualifications and his alleged lack of experience with respect to railroads, but that does not render him unqualified to testify pursuant to Federal Rule of Evidence 702.[4]

### B. Positioning of Spikes

Next, Defendant argues that any evidence, testimony, or references regarding spikes allegedly not being properly positioned should be excluded as irrelevant and unfairly prejudicial. Dr. Shinnick testified that at the site inspection some of the spikes he observed were not properly positioned which could impede the operation of the derail by making it wiggle, wobble, or stick. (Doc. 40, Ex. 1 at 31-32). However, Defendant argues that there is no evidence that the spikes were not properly positioned on December 2, 2009, the date of the incident. Dr. Shinnick testified:

> Q. When Mr. Wolfe was operating this derail let's say over the course of I believe the evidence is a few months he'd been on assignment, so in the few months leading to the date of alleged injury, do you believe that the spikes were elevated and raised during that entire period of time?

---

[4] Moreover, it is rather remarkable for CSX to argue that Dr. Shinnick does not have sufficient knowledge with respect to railroads when he has worked for CSX a number of times as a consultant. (Doc. 43 at 5).

>    A.   I do not know.
>
>    Q.   Did he mention to you or did he state when you talked to him that this was a condition with raised spikes that he had ever observed or noted?
>
>    A.   I didn't ask him that, but I did point out that the spikes were loose and should have been tamped down to a secure position.

(*Id*. at 32).  Plaintiff maintains that the derail at issue "had a little snag in it" on the date of his injury and that "snag" was always encountered when operating this derail.  (Doc. 41 at 89).  However, Plaintiff was asked in an open ended fashion to state what was wrong with the derail and there was no allegation that it was spiked improperly, positioned improperly, or secured improperly.  Therefore, Defendant argues that there is no evidence that the spikes were loose or otherwise improperly positioned at the relevant time – December 2, 2009.  Moreover, Defendant argues that there is a great danger the jury will be misled and confused as to what it is being asked to examine – the state of the derail on December 2, 2009 or September 17, 2013.  Accordingly, Defendant argues that such evidence has no probative value, is unfairly prejudicial, and should be excluded.

  FELA requires a railroad to provide safe equipment for its employees regardless of who owns and controls the equipment.  Under FELA, the Railroad has a "non-delegable" duty to exercise reasonable care to furnish its employees with a safe place to work.  *Shenker v. B.& O. R. Co.*, 374 U.S. 1, 7 (1963).  This duty is a continuing one which is not relieved by the employee's work at the specific place being fleeting or infrequent.  *Bailey v. Central Vt. Ry.*, 319 U.S. 350, 353 (1943).  The duty to furnish a safe workplace continues unabated even when the Railroad requires its employees to go upon premises belonging to others to work even through the unsafe condition is in premises over which

the Railroad has no control. *Ellis v. Union Pac. R. Co.*, 329 U.S. 649 (1947). Included in the Railroad's non-delegable duty is the duty to inspect for hazards on the property of third parties and to take precautions to protect its employees from unsafe conditions. *Shenker*, 374 U.S. at 8 ("We hold that the B&O had a duty to inspect [the third party's property] before permitting its employees to work with them.").

The Court declines to exclude evidence, testimony, or references regarding spikes allegedly not being properly positioned. Defendant can certainly argue that Plaintiff never expressly mentioned that the derailer was improperly spiked, positioned, or secured on December 2, 2009, but that does not render the state of the derailer on September 17, 2013 irrelevant. Defendant certainly has a legitimate argument that the state of the derailer nearly four years after the incident is not analogous to the state of the derailer at the time of the incident. The Court is confident that defense counsel will highlight the difference between the derailer in December 2009 and the derailer in September 2013, so as not to confuse the jury.

### C. Effect of Plaintiff's Injuries on his Family

Finally, Defendant argues that any references or testimony regarding the effect of Plaintiff's alleged injuries on his family should be prohibited because there is no recovery for loss of consortium under the FELA and therefore such testimony is irrelevant. *See, e.g., Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993) (testimony of Plaintiff's wife regarding loss of services was highly prejudicial and irrelevant because loss of consortium is not actionable under FELA). Defendant argues that the Plaintiff is simply trying to backdoor evidence he knows is not admissible in a FELA case.

6

The FELA does not allow family members to recover any damages in an action that does not involve a fatality.  However, FELA does allow the injured employee to recover for the full extent of his injuries and disabilities, including mental anguish and emotional distress.  Here, Plaintiff argues that his injuries and disabilities have resulted in an increased burden on his family, and that the burden on his family is a source of ongoing anguish and distress for him.  Accordingly, testimony pertaining to how Plaintiff's injuries increased the burden on his family which is a source of anguish and distress for him is admissible for that limited purpose.

## II.    CONCLUSION

Accordingly, for these reasons, Defendant's motion *in limine* (Doc. 40) is **GRANTED IN PART** and **DENIED IN PART** as explained in this Order.

**IT IS SO ORDERED**.

Date:  9/26/14                                                                        *s/ Timothy S. Black*
                                                                                      Timothy S. Black
                                                                                      United States District Judge